# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

BERNADETTE BODO AND )
OVIDIU ANDREICA, )
              )
       Plaintiffs, )
              )      No. 17-cv-09254
     v. )
              )      Judge Martha M. Pacold
ALEJANDRO MAYORKAS, et al.,[1] )
              )
       Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Bernadette Bodo and Ovidiu Andreica challenge the denial of Bodo's Form I-130 application under the Administrative Procedure Act ("APA"), the Fifth Amendment, and the Mandamus Act. [10].[2] Defendants are a group of government officials responsible for the administrative adjudication of the application. Before the court are the parties' cross motions for summary judgment. For the reasons set forth below, the court denies plaintiffs' motion, [60], and grants defendants' motion, [58].

## BACKGROUND

Plaintiffs Bernadette Bodo, a United States citizen, and Ovidiu Andreica, a Romanian citizen, married on April 1, 2011. [22-2] at 43 [Administrative Record ("A.R.") 332].[3] Bodo and Andreica sought lawful permanent resident status (colloquially known as a green card) for Andreica. To that end, on July 1, 2011, Bodo filed a Form I-130 petition on behalf of her husband, Andreica, and Andreica filed a concurrent I-485 application for adjustment of status. *Id.*; A.R. 325. United States Customs and Immigration Enforcement ("USCIS"), a sub-agency of the Department of Homeland Security responsible for processing these forms, began to investigate and subsequently adjudicate the concurrent petition and application.

---

[1] Secretary of Homeland Security Alejandro Mayorkas is automatically substituted for the former office holder named as a defendant and sued in his official capacity. Fed. R. Civ. P. 25(d).

[2] Bracketed numbers refer to docket entries and are followed by page and / or paragraph number citations. Page numbers refer to the CM/ECF page number.

[3] All citations to the Administrative Record use its internal pagination.

As the adjudication went forward, the petition was referred to the Fraud Detection and National Security ("FDNS") section of USCIS on June 21, 2012, to investigate whether Bodo and Andreica's marriage was bona fide. A.R. 51; [65-1] at 2; *see* [46] at 3–4. The FDNS officer responsible for the case prepared a statement of findings, which was later converted to a memorandum ("the FDNS Memo"), on which USCIS relied in adjudicating Bodo's petition. A.R. 51–53; *see* [46] at 4.

Bodo's petition remained pending with USCIS from July 1, 2011, until April 8, 2013, at which time Andreica sought mandamus to require USCIS to adjudicate his application for adjustment of status. Petition at 9–10, No. 13-cv-2600 (N.D. Ill. Apr. 8, 2013), ECF No. 1.

On May 28, 2013, USCIS informed Bodo that it intended to deny her petition. Based on the information collected by the FDNS officer, USCIS reasoned that because Bodo's ex-husband, Flavius Alin Petrasca, filed an insurance claim at Bodo and Andreica's purported marital address—1444 North Washtenaw in Chicago—this indicated that Bodo still lived at the address with her ex-husband rather than Andreica. A.R. 51, 313. USCIS further explained that it made multiple site visits to the purported marital address and neighbors identified Petrasca as Bodo's husband rather than Andreica. Last, USCIS agents visited a separate address— 5616 North Washtenaw, also in Chicago—at which two neighbors identified Andreica as the occupant and claimed that they had never seen Petrasca at the property. A.R. 51–52, 313–14.

Bodo and Andreica responded to the USCIS notice with evidence purporting to establish that they had a bona fide marriage, A.R. 166–311, but USCIS denied their petition and application, A.R. 152–65. USCIS recognized the items of evidence Bodo and Andreica submitted in support of the application, but nevertheless found that the evidence did not meet the couple's burden to show that the marriage was bona fide because it did not establish that the couple resided together. A.R. 153–54.

On appeal, the Board of Immigration Appeals ("the BIA" or "the Board") remanded. A.R. 94. It held that USCIS relied on an incomplete record when denying Bodo's I-130 petition. *Id.* In particular, the BIA criticized USCIS for failing to include documentary evidence of the insurance claim and site visits on which it relied. *Id.* The Board also criticized USCIS for failing to note that it interviewed Bodo and Andreica or disclosing any evidence relating to the interviews. *Id.* n.1.

USCIS reaffirmed its decisions on remand. A.R. 60, 86–87. With more reasoning and more citations to the record, USCIS came to the same conclusion that it did the first time—Bodo and Andreica's evidence did not show that they lived together, and thus, they could not establish that they were in a bona fide marriage. A.R. 60–65.

The BIA dismissed Bodo's second appeal. A.R. 11–12. The Board agreed with USCIS's new reasoning on remand, and explained that Bodo had not put forth sufficient evidence to meet the burden to show that her marriage to Andreica was bona fide. *Id.*[4]

Bodo and Andreica then filed this suit on December 22, 2017. [1]. Their amended complaint asserts that the BIA erred in denying Bodo's I-130 petition. [10] at 1–2. It claims that the denial violated the APA and the Fifth Amendment. *Id.* at 8–9. Thus, plaintiffs allege that they are entitled to (1) an order setting aside the BIA's opinion and (2) a writ of mandamus. *Id.* at 8–10.

Defendants moved to dismiss in part for lack of jurisdiction, [14], but Judge Gottschall, who was then presiding, denied that motion, [19]. Defendants designated the administrative record. [22]. Plaintiffs moved to supplement the administrative record and to take limited discovery. The court granted the motion in part (requiring defendants to supplement the record) and denied it in part (denying plaintiffs' request for depositions of witnesses interviewed in the underlying investigation). [42].

This court inherited the case. [45]. Plaintiffs and defendants now both move for summary judgment. [60]; [58].

## LEGAL STANDARD

In administrative cases like this one, summary judgment "serves as a 'mechanism for deciding, as a matter of law, whether the agency action is . . . consistent with the APA standard of review.'" *Star Way Lines v. Walsh*, -- F. Supp. 3d ----, 2022 WL 971884, at *4 (N.D. Ill. Mar. 31, 2022) (alteration in original) (quoting *Fisher v. Pension Benefit Guar. Corp.*, 468 F. Supp. 3d 7, 18 (D.D.C. 2020)). That standard of review is deferential and limited. *See Fliger v. Nielsen*, 743 F. App'x 684, 687 (7th Cir. 2018) (order). The court may only set aside the BIA's decision "if it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence in the case, or not in accordance with law." *Id.* (quoting *Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 853 (7th Cir. 2009)). The court's review is confined to the administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). And the court's

---

[4] Bodo and Andreica sought mandamus a second time while their second administrative appeal was pending. Petition at 4, No. 17-cv-4361 (N.D. Ill. June 9, 2017), ECF No. 1. They alleged that USCIS had failed to forward their appeal to the BIA for six months. *Id.* at 6. Bodo and Andreica voluntarily dismissed that case less than two months later, Notice of Voluntary Dismissal at 1, No. 17-cv-4361 (N.D. Ill. Aug. 2, 2017), ECF No. 7, possibly because the USCIS forwarded the appeal on July 31, 2017, A.R. 40.

"sole basis for review" to determine the agency's reasoning is the "stand-alone opinion of the Board." *Vahora v. Holder*, 626 F.3d 907, 912 (7th Cir. 2010).

# ANALYSIS

## I.    Administrative Procedure Act

Plaintiffs bring Counts 1, 2, and 3 under the APA, alleging that defendants' denial of Bodo's I-130 petition (1) "is 'arbitrary, capricious, and an abuse of discretion, or not in accordance with the law' in that it fails to consider evidence which the agency is mandated by legal precedent and regulation to consider in contravention of 5 U.S.C.A. § 706(2)(A)"; (2) "is 'without observance of procedure required by law' nor 'in accordance with the law' in that is [*sic*] does not properly apply the proper burden of proof- preponderance of the evidence- to the visa petition in contravention of 5 U.S.C.A. § 706(2)(D)"; and (3) "is 'arbitrary, capricious, and an abuse of discretion, or not in accordance with the law' because the FDNS Memo is inherently unreliable and inaccurate in contravention of 5 U.S.C.A. § 706(2)(A)." [10] ¶¶ 14–16.

To acquire lawful permanent resident status for a noncitizen spouse, a United States citizen must file a Form I-130 petition with USCIS.  8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. § 204.1(a)(1).  If granted, an I-130 petition establishes a formal relationship that permits the beneficiary to obtain a visa as an "immediate relative."  8 C.F.R. § 204.1(a)(1).  The USCIS Director will only approve the I-130 petition "if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative[.]"  8 U.S.C. § 1154(b).  Further, under § 1154(c):

> Notwithstanding the provisions of subsection (b) no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

"The burden is on the petitioner . . . to establish by a preponderance of the evidence that the beneficiary . . . is eligible for the benefit sought." *Fliger*, 743 F. App'x at 687 (citing 8 U.S.C. § 1361).  This requires the petitioner to show that the marriage "more likely than not" is bona fide. *Lopez-Esparza v. Holder,* 770 F.3d 606, 609 (7th Cir. 2014).  "To establish that a marriage is or was not fraudulent, a couple must show that at the time of the marriage, they intended to establish a life together." *Fliger*, 743 F. App'x at 687–88 (citations omitted).

4

Plaintiffs contend that three aspects of the administrative adjudication made the Board's decision to deny Bodo's I-130 petition unlawful: (1) the Director failed to consider material evidence, specifically, third party affidavits, the commingling of funds, and evidence of a new marital residence; (2) defendants applied the wrong burden of proof; and (3) the allegations in the FDNS Memo are unreliable, and thus, unsupported by substantial evidence.

## A.    Failure to Consider Material Evidence

Bodo and Andreica argue that USCIS ignored material evidence when denying Bodo's petition, and the BIA affirmed, rendering the agency's decision unlawful. Plaintiffs break this evidence out into three groups: (1) a set of affidavits by third parties; (2) evidence that plaintiffs had commingled assets; and (3) miscellaneous evidence indicating that plaintiffs had moved to a new marital home. [60] at 17–26.

The APA has no standalone requirement that an agency must consider all pieces of material evidence. *See* 5 U.S.C. §§ 701–06. But the Seventh Circuit has held that a "wholesale failure to consider evidence" can be an error of law that requires remand. *Iglesias v. Mukasey*, 540 F.3d 528, 531 (7th Cir. 2008) (quoting *Hanan v. Mukasey*, 519 F.3d 760, 764 (8th Cir. 2008)). At bottom, the court reviews for whether the agency's decision satisfied the arbitrary-and-capricious standard. Under that standard, the court must ensure that the BIA "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Ind. Forest Alliance, Inc. v. U.S. Forest Serv.*, 325 F.3d 851, 859 (7th Cir. 2003) (alterations in original) (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). The Seventh Circuit has noted the "high hurdle" facing plaintiffs challenging the denial of a Form I-130 petition under the APA. *Ogbolumani v. Napolitano*, 557 F.3d 729, 733 (7th Cir. 2009). "It's not enough that we might have reached a different conclusion; so long as a reasonable mind could find adequate support for the decision, it must stand." *Id.* (citing *Ghaly v. INS*, 48 F.3d 1426, 1431 (7th Cir. 1995)).

*Affidavits.* Plaintiffs first argue that USCIS erroneously ignored twelve affidavits sworn by third parties and that USCIS erroneously characterized the affidavits as "self-serving." These affidavits were generally submitted by friends (including Bodo's ex-husband) in support of plaintiffs' claim that their marriage was bona fide. *See* A.R. 183–99. According to plaintiffs, USCIS's failure to consider the affidavits is enough to set aside the decision, particularly because this evidence "satisfies the preponderance of evidence standard." [60] at 23. Defendants argue that the USCIS decision rejected the affidavits because they possess limited evidentiary value. [65] at 2–3.

5

The parties do not address the core flaw with plaintiffs' argument: the *BIA* opinion, as opposed to the *USCIS* decision, does not describe the affidavits as self-serving. The Seventh Circuit has held that because courts generally review only final agency action, the last reasoned agency order is the *only* one that the court may consider when determining the agency's reasoning. *See, e.g.*, *Vahora*, 726 F.3d 912; *Moab v. Gonzales*, 500 F.3d 656, 659 & n.1 (7th Cir. 2007) (declining to review the immigration judge's reasoning where BIA opinion lacks "language of express adoption"). "When the BIA issues its own opinion . . . this court's task is to review only the opinion of the BIA." *Moab*, 500 F.3d at 659 (citation omitted). And this is true even where the BIA expressly agrees with the specific conclusions of the decision it is examining on appeal. *Vahora*, 626 F.3d at 912.

The court acknowledges that it is unclear why USCIS (as opposed to the BIA) used the term "self-serving" for affidavits that were obviously not self-serving, or why USCIS cited several inapposite cases. But the BIA neither relied on nor adopted this incorrect reasoning; it simply explained that it agreed with USCIS that the documentary evidence is "not persuasive evidence of a shared life together sufficient to overcome the doubts raised by the derogatory information raised in the investigative report." A.R. 12. Further, even if one stretches the BIA's use of the verb "agrees" to suggest it was adopting USCIS's characterization of the affidavits as self-serving, the APA instructs courts to take due account of the rule of prejudicial error. 5 U.S.C. § 706; *see generally Shinseki v. Sanders*, 556 U.S. 396, 406–07 (2009). The BIA's alternative reasoning that the affidavits held limited evidentiary value thus renders harmless any error as to whether the affidavits were, in fact, self-serving.

The more critical question, then, is whether the BIA (as opposed to USCIS) failed to consider the affidavits, and if it did, whether that failure made the Board's decision to deny the I-130 petition arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). The BIA did not ignore the affidavits. Although it did not use the word "affidavit," the Board nevertheless acknowledged Bodo's "documentary evidence" and agreed with USCIS that this evidence did not overcome the negative information in the investigative report. A.R. 12. The Board need not address every piece of evidence by name or "write an exegesis on every contention." *Mansour v. INS*, 230 F.3d 902, 908 (7th Cir. 2000) (quoting *Becerra-Jimenez v. INS*, 829 F.2d 996, 1000 (10th Cir. 1987)). Instead, it need only consider the issues raised and show the reviewing court that "it has heard and thought and not merely reacted." *Id.* (quoting *Becerra-Jimenez*, 829 F.2d at 1000). The Board decision reflects that it carefully weighed the evidence plaintiffs provided against the negative information in the report and assessed that the negative evidence was stronger. A.R. 12. The decision shows that the Board did not "entirely fail[] to consider an important aspect of the problem" and its explanation did not run "counter to the evidence" before it. *State Farm*, 463 U.S. at 43.

*Commingling of funds.* With respect to the commingling of funds, plaintiffs argue that defendants "failed to consider the substantial evidence submitted by Bodo and Andreica wherein they are listed as each other's spouse on insurance policies, income taxes, bank accounts, several credit cards, cell phone accounts, service bills, and vehicle titles as well as evidence of their social activities together." [60] at 24. Defendants argue that "USCIS's decision specifically addresses these items, and acknowledges that such documents constitute *some* evidence of a shared residence." [65] at 3.

Again, the parties' arguments do not analyze the *BIA* decision, which is the "sole basis" of the court's review. *Vahora*, 626 F.3d at 912. As with the affidavits, the Board's decision does not reference the evidence of commingled funds directly. Rather, the Board's acknowledgment of this evidence is subsumed within its more general discussion of Bodo's "documentary evidence," which the Board considered and weighed against the investigatory report, finding the latter more persuasive. A.R. 12. This reasoning, albeit "light," "provides an adequate explanation, and nothing more is required." *Ogbolumani*, 557 F.3d at 734. Both on administrative appeal and in this court, the USCIS Director acknowledged that Bodo submitted evidence of some commingled funds. A.R. 43–44; [58-2] at 17–18. But in its administrative appellate brief, with which the BIA "agree[d]," A.R. 12, USCIS thoughtfully explained why much of the financial information did not discredit the key allegation against Bodo and Andreica—that Bodo still lived with her ex-husband, Petrasca, as a married couple. *See* A.R. 43–44. That reasoning evinces a "rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

*New marital home.* Plaintiffs argue that the denial of the I-130 petition was arbitrary because the Board did not consider a mix of additional, miscellaneous evidence indicating that they shared a new marital home together. [60] at 24–26. The second USCIS decision did not acknowledge this evidence, but USCIS addressed it in the Director's brief on administrative appeal. *Compare* A.R. 60–66, *with* A.R. 44. Plaintiffs also claim this "flip-flop" violated the *Chenery* principle that agency action can only be upheld on the grounds invoked by the agency. [60] at 25 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947) (*Chenery II*)).

Neither of plaintiffs' claims is persuasive. Starting with the arbitrariness claim: the Board's failure to name specific pieces of evidence, as with the other evidence discussed, does not show that its decision was arbitrary. The documentary evidence of a new marital home was before the Board when it rendered its decision, as USCIS addressed the evidence in its appellate briefing. *See* A.R. 44. The Board acknowledged the general documentary evidence, but the Board found that the evidence did not outweigh the negative information derived from the investigatory

report. A.R. 12. Furthermore, evidence of a new marital home formed years later is of limited probative value when trying to assess the couple's intentions at the time they were married. *See Fliger*, 743 F. App'x at 689; *cf. Yitang Sheng v. Att'y Gen. of U.S.*, 365 F. App'x 408, 410 (3d Cir. 2010) ("The couple's conduct after the marriage is relevant only to the extent that it evidences their state of mind at the time they married." (Citation omitted)).

The *Chenery* argument is unpersuasive. The *Chenery* principle is that agency action rises and falls based on the rationale the agency used when coming to the decision under review. *See generally* Charles H. Koch, Jr. & Richard Murphy, 4 Admin. L. & Prac. § 11:30.10 (Westlaw) (2022). Plaintiffs attempt to apply the *Chenery* principle to an intra-agency appeal, contending that the BIA was not permitted to uphold the USCIS decision on grounds not invoked by USCIS. [60] at 25. But plaintiffs do not cite any case in which a court remanded to an agency because the final order of the agency addressed evidence or arguments not made to the initial adjudicator at the agency. Applying *Chenery* within the agency would not comport with *Chenery*, as *Chenery*'s goal is to avoid *courts* guessing at the agency's rationale when doing judicial review and to prohibit the agency from engaging in post hoc reasoning. *See* Kevin M. Stack, *The Constitutional Foundations of* Chenery, 116 Yale L.J. 952, 962 (2007). The BIA serves a different function than a reviewing court, as its order is the final agency action that becomes a court's "sole basis" for review. *Vahora*, 626 F.3d at 912.

*

Plaintiffs' arguments regarding the alleged ignorance of evidence by the agency adjudicators are not persuasive. The Board addressed the evidence Bodo presented that ran counter to the Board's conclusion. And it explained that the FDNS Memo provided evidence of a non-bona fide marriage outweighing the evidence Bodo put forth. The Board's reasoning was thin. But thin reasoning alone does not warrant a remand. *See Ogbolumani*, 557 F.3d at 734. The Board's decision was supported by substantial evidence in the FDNS investigative report that Bodo continued to live with her ex-husband. A.R. 12. And the Board's order did not show that it acted arbitrarily or capriciously in denying the I-130 petition. Thus, plaintiffs' APA challenge based on the Board's failure to consider material evidence cannot succeed.

### B.   Burden of Proof

The parties agree that for Bodo to obtain approval of her Form I-130 petition, she had to prove by a preponderance of the evidence that she and Andreica married because they intended to share a life together at the time they married. *See Matter of Soriano*, 19 I. & N. Dec. 764, 765 (BIA 1988); *Matter of Soo Hoo*, 11 I. & N. Dec. 151, 152 (BIA 1965).

8

The BIA stated that it was assessing Bodo's petition using a preponderance-of-the-evidence standard. A.R. 11. Ultimately, the Board concluded that the neighbors' interview statements, weighed along with other evidence, suggested that Bodo's marriage was not bona fide. The Board did not employ an improper standard to deny Bodo's I-130 petition.

## C. The FDNS Memo

Plaintiffs also argue that the agency's denial of Bodo's I-130 petition was arbitrary and capricious because defendants relied on the FDNS Memo. As noted previously, a USCIS officer in the FDNS section prepared the FDNS Memo for use during the adjudication of Bodo's petition based on her earlier statement of findings. [46] at 4. Plaintiffs attack the FDNS Memo on two grounds: (1) it demonstrates capricious behavior by USCIS and has significant indicia of bad faith and (2) the information in the Memo is unreliable and contradictory. [60] at 26.

Plaintiffs argue that the USCIS Director decided to start a fraud investigation against the couple three weeks after Andreica sought a writ of mandamus against the USCIS Director on April 8, 2013. *Id.* at 28. According to plaintiffs, this constitutes retaliation for the couple suing. *Id.*

But as defendants point out, FDNS opened an investigation on plaintiffs' possible marriage fraud on June 21, 2012, well before plaintiffs sought mandamus. [65] at 5; [65-1] at 2. This weakens plaintiffs' contention that USCIS retaliated against plaintiffs for Andreica's lawsuit. Further, the court agrees with defendants that it would be "entirely reasonable that, after the mandamus lawsuit was filed, USCIS would make efforts to promptly complete the adjudication of Bodo's I-130 petition and issue a decision" and that such efforts to complete the adjudication would include the site visits FDNS performed on May 2, 2013. [65] at 5 n.1.

Plaintiffs also argue that the FDNS Memo is unreliable because the individuals questioned by the FDNS officer lacked sufficient knowledge. The FDNS Memo relays details from site visits that the reporting officer made to addresses relevant to the FDNS investigation. The first site visit on May 2, 2013 was to Bodo and Andreica's purported marital address, 1444 North Washtenaw. A.R. 51. Plaintiffs argue that the USCIS Director arbitrarily "drew the conclusion that Bodo must be cohabitating with her ex-husband Petrasca and not with her actual husband Andreica" from the officer's notes of her interviews with neighbors. [60] at 29. They also contend that the neighbors did not have an adequate basis of knowledge to speak credibly about the couple. *Id.* at 29. Last, plaintiffs point to the fact that the FDNS Memo was based on the FDNS officer's impressions from the conversations and not on actual affidavits from the neighbors or sworn testimony. *Id.* at 31.

As to the second site visit, at 5616 North Washtenaw, Apartment 105, plaintiffs attack the credibility and basis of knowledge of each of the people that the FDNS officer questioned, and they attack the conclusions USCIS drew from these conversations. Plaintiffs note that the neighbor from Apartment 104 stated that he "believed" that "two men lived in Apt. #105 and that they were young men from Europe." *Id.* at 32 (citation omitted). According to plaintiffs, this neighbor never identified the tenants of Apartment 105 by name, never stated whether he had conversations with the tenants, and never told the investigators that he was ever invited into that apartment. *Id.* Instead, plaintiffs contend, the neighbor was "simply guessing[.]" *Id.* at 33.

Plaintiffs also note that the neighbor from Apartment 103 stated "she did not know the tenants of Apt. #105 but thought there might be three men that lived there." *Id.* (citation omitted). Plaintiffs argue that this neighbor's "guess" that Andreica might be one of the three men that lived in Apartment 105 is contradicted by other statements collected by the FDNS officer. *Id.* This contradictory evidence includes: (1) the statement of Lucian Porumb, who had lived in Apartment 105 for the last six months, indicating that he did not know Andreica; (2) the statement of Donna Domes, the property manager of Apartment 105, revealing that the lessee of the property was Toma Basabara, not Andreica; and (3) the testimony of Basabara, whom plaintiffs describe as "the most relevant witness" in the USCIS Director's investigation, indicating that Andreica had never been to Basabara's apartment, Apartment 105, and that Petrasca had lived there from January 2012 through September 2012. *Id.* at 32–36.

First, the fact that the FDNS Memo relied on summaries, rather than actual affidavits or sworn testimony, does not make the Memo unreliable. The Seventh Circuit considered and rejected this argument in *Ogbolumani*:

> David and Lacey try to discount this evidence by pointing out that USCIS relied not on sworn statements by Jamiler and her sister-in-law, but summaries of what they had said, written by USCIS investigators. While sworn statements would have bolstered USCIS's case, they are not, as David and Lacey urge, required. Their dissatisfaction with the summaries is a hearsay objection of sorts—in essence they argue that, to ensure the reliability of such damaging evidence, the statements must come straight from the horse's mouth. But even in removal proceedings, hearsay is admissible so long as it's probative and its use is not fundamentally unfair.

557 F.3d at 734 (citation omitted); *see also Sehgal v. Lynch*, 813 F.3d 1025, 1031–32 (7th Cir. 2016). Here, although sworn statements would have strengthened USCIS's position, the fact that USCIS used summaries of what the neighbors said

did not, by itself, require the BIA to disregard the information the neighbors provided.

Second, plaintiffs' argument that the FDNS Memo is unreliable ultimately rests on speculation. The Seventh Circuit has made clear, in the context of agency reports, that "[u]nsubstantiated generalizations without more are not enough for us to question the reliability of evidence[.]" *Doumbia v. Gonzales*, 472 F.3d 957, 963 (7th Cir. 2007); *Ogbolumani*, 557 F.3d at 734 (noting that "speculation" is not enough to call into question an USCIS investigator's report).

With respect to the first FDNS site visit (to Bodo and Andreica's purported marital address, 1444 North Washtenaw), plaintiffs state that "it's reasonable for the neighbors to have assumed, albeit incorrectly, that nothing had change[d] when they do not have frequent interactions with Bodo, Andreica, or Petrasca nor are they privy to what happens inside the residence." [60] at 29. Plaintiffs further elaborate:

> the neighbors *probably* saw Petrasca going into the building without knowing, or having any reason to know, that Petrasca and Bodo were no longer together. The neighbors also *probably* saw Andreica, a European immigrant, go into the building as many of the foreign exchange students Bodo had hosted in the past, not knowing, or having any reason to know, that Andreica had married Bodo.

[60] at 30 (emphasis added). These inferences rest on speculation rather than on any facts that undermine the neighbor's assertion that Petrasca was Bodo's husband. Further, some evidence directly undermines plaintiffs' view that the neighbors at the first site visit did not know Petrasca well. For instance, the USCIS decision noted that the neighbors made a positive identification of Petrasca, and knew his nickname, Alin. A.R. 4.

For the second visit (to 5616 North Washtenaw, Apartment 105), plaintiffs' position that the neighbor in Apartment 104 was "simply guessing" lacks support in the record. Plaintiffs also argue that Porumb's statement is "more credible since he actually lived" at Apartment 105. But the record suggests that USCIS considered Porumb's statement, A.R. 5, and weighed it against other contradictory evidence, a position with which the Board generally agreed, A.R. 11.

Accordingly, plaintiffs have not shown that the BIA's reliance on the FDNS Memo was unwarranted, nor that its decision was unsupported by substantial and probative evidence.

The court grants defendants' motion for summary judgment with respect to Counts 1, 2, and 3.

## II.    Due Process

In Count 5 of the amended complaint, plaintiffs allege:

> Defendants' denial of Plaintiff Bodo's I-130 and Defendants' failure to
> allow Plaintiffs' cross-examination of adverse witnesses or the
> investigators whom [*sic*] prepared the FDNS Memo unlawfully deprived
> Bodo of her property or liberty interest in the adjudication of her I-130
> marriage petition in violation of the Due Process Clause of the Fifth
> Amended [*sic*] to the United States Constitution.

[10] ¶ 18.

The Due Process Clause of the Fifth Amendment provides that no person
shall "be deprived of life, liberty, or property, without due process of law."  U.S.
Const. amend. V.  A court considering a due process claim must consider

> three distinct factors: First, the private interest that will be affected by
> the official action; second, the risk of an erroneous deprivation of such
> interest through the procedures used, and the probable value, if any, of
> additional or substitute procedural safeguards; and finally, the
> Government's interest, including the function involved and the fiscal
> and administrative burdens that the additional or substitute procedural
> requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also Bradley v. Village of
University Park*, 929 F.3d 875, 882 (7th Cir. 2019).  The protections of the Due
Process Clause apply because granting an I-130 petition is nondiscretionary when
the petitioner meets the statutory standard.  *See* 8 U.S.C. § 1154(b) ("the Attorney
General shall . . . .");  *Garfias-Rodriguez v. Holder*, 702 F.3d 504, 525–26 n.16 (9th
Cir. 2012) (en banc).  The court assesses each prong of the *Mathews* test in turn.

### A.    Private Interest

Plaintiffs have a strong private liberty interest in the outcome of the I-130
petition's adjudication.  Without lawful permanent resident status, it is possible
that the federal government will remove Andreica from the United States and Bodo
will be forced to live apart from her husband.  *Ching v. Mayorkas*, 725 F.3d 1149,
1157 (9th Cir. 2013).  Like the Ninth Circuit, the court concludes that the private
interest weighs in favor of Bodo and Andreica.  *Id.*  However, plaintiffs' interest
here is not as strong as the plaintiff's interest in *Ching*.  Here, Bodo remains free to
file a new I-130 petition with further documentation, whereas in *Ching*, the BIA

deemed the plaintiff ineligible to benefit from an I-130 petition because it held that she had committed marriage fraud in the past. *Id.* at 1154; 8 U.S.C. § 1154(c)(2).

## B.    Risk of Erroneous Deprivation

The second factor, the risk of erroneous deprivation, is mixed, weighing slightly in the government's favor. Unlike in *Ching*, where USCIS made only one site visit at which it solicited one statement, 725 F.3d at 1158, officers here made two visits and spoke to multiple neighbors at multiple locations to come to its conclusion that Bodo and Petrasca continued to cohabitate despite being divorced. *See* A.R. 51–53. This conclusion is bolstered by the fact that Bodo and Petrasca had taken 10 trips together since 2010, A.R. 51, despite filing for divorce in 2011, A.R. 496. Further, the adverse witnesses came to few specific factual conclusions about the Bodo-Andreica marriage specifically; they merely gave statements providing circumstantial evidence that Bodo continued to live with Petrasca. A.R. 51–53; *cf. Riano v. McDonald*, 833 F.3d 830, 836 (7th Cir. 2016) (cross-examination not necessary where board did not rely on subjective feelings of witnesses). Thus, the lack of cross-examination posed a less serious risk of erroneous deprivation than it did in *Ching*, where the core witness was a plaintiff's ex-spouse and could have been motivated by malice or vindictiveness. 725 F.3d at 1158 (quoting *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970)). Bodo and Andreica do not allege that the witnesses who gave statements to USCIS had malicious motives.

The court further agrees with defendants that *Ching* is distinguishable on the law. There, the BIA had affirmatively found that the plaintiff had committed marriage fraud based on the previously described affidavit from her ex-husband. *Id.* at 1154 (BIA held "the record supports a finding that the beneficiary's prior marriage was entered into for the purpose of evading the immigration laws."). Thus, under § 1154(c)(2), the plaintiff in *Ching* lacked eligibility to benefit from an I-130 petition. By contrast, Bodo is free to file an additional I-130 petition for Andreica with further supporting documentation, and unlike the plaintiff in *Ching*, will not have to rebut a marriage-fraud determination. *See* A.R. 12 (BIA decision); [65] at 11 (defendants' brief). Although this by no means diminishes the burden of restarting the I-130 process, the significantly lesser consequence for Bodo and Andreica (starting the I-130 process anew) compared to that for the plaintiff in *Ching* (a bar on benefitting from a future I-130 petition) further illustrates the diminished risk of erroneous deprivation.

## C.    Government Interest

Last, the government interest weighs against plaintiffs. Additional hearings at which USCIS would have to bring in the various witnesses they interviewed during the site visits would come at significant cost to USCIS's time and resources. The backlog at the agency is already extensive; 80% of the I-130 petitions from U.S.

citizen spouses resolve within 28 months, but at some service centers, 80% only resolve within 50 months.[5]  Requiring cross-examination in cases like this one would create further delays for I-130 petitioners and beneficiaries and impose heavy burdens on USCIS.  Where the risk of erroneous deprivation is low or mixed, and the liberty interest at stake is attenuated (as is the case here, relative to *Ching*), the government interest in quickly adjudicating I-130 petitions weighs against further procedural protections like cross-examination.  *See Miller v. City of Chicago*, 774 F.2d 188, 193–95 (7th Cir. 1985); *cf. Van Harken v. City of Chicago*, 103 F.3d 1346, 1352 (7th Cir. 1997) (comparing *Goldberg* with *Mathews*).

### D.    General Due Process Considerations

Outside the specific *Mathews* factors, procedural due process generally requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner.  *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see Ogbolumani*, 557 F.3d at 735–36 (applied in an I-130 case).  Bodo and Andreica received those procedural protections.  USCIS informed Bodo that it intended to deny her I-130 petition.  A.R. 312–14.  It provided her an opportunity to contest that determination numerous times in writing and through interviews.  *E.g.*, A.R. 172–82 (brief and affidavits); [60] at 40 (noting that plaintiffs were interviewed three times).  The Due Process Clause protects against only "egregious administrative irregularities."  *Ogbolumani*, 557 F.3d at 735 (quoting *Sokolov v. Gonzales*, 442 F.3d 566, 569 (7th Cir. 2006)).  Plaintiffs have not pointed to any such irregularities that would require setting aside the Board order.

*

Plaintiffs' responsive arguments are unpersuasive.  They rely primarily on two cases, *Ching* and *Malave v. Holder*, 610 F.3d 483 (7th Cir. 2010).  Neither shows that defendants violated the Due Process Clause in adjudicating Bodo's I-130 petition.  As to *Ching*, the court has already discussed why it is distinguishable.  *See supra*, II.A–B.  Further, *Ching* is non-binding and as far as the court can tell, the only case in the I-130 context that has required cross-examination of adverse witnesses as a requirement of due process.  And *Malave* does not carry as much weight as plaintiffs place on it.  *Malave* held that the specific removal hearing from which the petitioner petitioned for review did not comply with a *statutory* cross-examination requirement.  610 F.3d at 488; 8 U.S.C. § 1229a(b)(4)(B).  Bodo's I-130 petition adjudication was not a removal hearing; *Malave* does not hold that the Constitution requires cross-examination during the I-130 adjudication process.  Accordingly, the court grants defendants' motion for summary judgment with respect to Count 5.

---

[5] U.S. Citizenship & Immigr. Servs., *Check Case Processing Times*, https://egov.uscis.gov/processing-times/ (interactive tool) (last visited Aug. 15, 2023).

### III. Mandamus Act

Count 4 of the amended complaint alleges: "Defendant's failure to properly perform a duty owned to Plaintiff, Ms. Bodo, in adjudicating her visa petition (I-130) filed pursuant to 8 U.S.C. § 1151(b)(2)(A)(i) . . . in accordance with legal precedent and regulation [contravened] 28 U.S.C. § 1361." [10] ¶ 17. "Mandamus relief will be granted if the plaintiff can demonstrate that the three enumerated conditions are present: (1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (quoting *Iddir v. INS*, 301 F.3d 492, 499 (7th Cir. 2002)).

Plaintiffs' mandamus claim cannot succeed based on the first and third conditions. First, plaintiffs have not shown a "clear right to the relief sought." *Id.* As described above, the Board's decision conformed with the APA and the Due Process Clause. Plaintiffs do not allege that defendants violated any other source of law, and thus, plaintiffs do not have a "clear right to the relief sought."

Second, plaintiffs have another adequate remedy available: the judicial review they are seeking in this case. Mandamus is available only when the government act for which a plaintiff seeks review is effectively unreviewable. *E.g.*, *Abelesz v. OTP Bank*, 692 F.3d 638, 652–53 (7th Cir. 2012) (granting writ where erroneous finding of personal jurisdiction on motion to dismiss would effectively coerce defendant into massive settlement); *Matter of Sandahl*, 980 F.2d 1118, 1119 (7th Cir. 1992) (granting writ to vacate order disqualifying a law firm). Here, plaintiffs have sought judicial review under the APA. 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."); *see* 33 Richard Murphy, *Federal Practice and Procedure* § 8305 n.15 (2d ed. 2022) (collecting cases); *cf. Save the Dunes Council v. Alexander*, 584 F.2d 158, 162 (7th Cir. 1978); *City of Highland Park v. Train*, 519 F.2d 681, 692 (7th Cir. 1975). That remedy is adequate even though it did not resolve in plaintiffs' favor. The court grants summary judgment to defendants on Count 4.

### CONCLUSION

Defendants' motion for summary judgment [58] is granted. Plaintiffs' motion for summary judgment [60] is denied. Enter final judgment. Civil case terminated.

Date: August 18, 2023                    /s/ Martha M. Pacold